IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AMANDA UNDERWOOD,

    Plaintiff,

v.           CIVIL ACTION NO.   2:11-cv-00506

THE WEST VIRGINIA DEPARTMENT
OF HEALTH AND HUMAN RESOURCES, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

   Pending before the court are several motions for summary judgment. The defendants have filed four motions for summary judgment: 1) a combined motion for summary judgment by defendants Kathryn A. Bradley, Justin Castleman, John Doe(s), Mary Doe(s), Shelly Nicewarner, Tzouri Oliver, and Unknown Employees of the Department of Health and Human Resources [Docket 67]; 2) Mary Carper's motion for summary judgment [Docket 64]; 3) John Najmuski's motion for summary judgment [Docket 69]; and 4) WVDHHR's motion for summary judgment [Docket 71]. All defendants filed a joint supplemental memorandum in support of their motions for summary judgment [Docket 141]. The plaintiff filed a motion for summary judgment [Docket 92], and a supplemental motion for summary judgment [Docket 139] along with a supplemental memorandum in support [Docket 140].

   For the reasons described below, the defendants motions [Dockets 64, 67, 69, 71] are **GRANTED**, and the plaintiff's motions [Dockets 92, 139] are **DENIED**.

## I.  Background

### A. *Factual History*

This case arises from the plaintiff's allegations that the defendants violated her constitutional rights and negligently inflicted emotional distress to her in the process of removing her children from her custody and later permanently terminating her parental rights.

The events that led to this case initially concerned a different child, M.H., who lived in plaintiff Amanda Underwood's household. M.H. is the daughter of Underwood's live-in boyfriend, Travis Harrell, and Kristy Imbach. Underwood and Harrell have two children together, C.H.1 and C.H.2. On July 7, 2009, West Virginia Department of Health and Human Resources ("WVDHHR") employees Mary Carper (also a defendant in this action) and Andrew Brown visited the home of Underwood and Harrell to speak with M.H. concerning allegations of abuse by Imbach and Imbach's boyfriend. According to Underwood, she asked them to return later when Harrell would be home. Instead of doing so, the WVDHHR employees called the state police. The state trooper arrived and Underwood allowed him and the WVDHHR employees in her home to talk to M.H. WVDHHR observed the interactions of Underwood, M.H., C.H.1, and C.H.2.

On July 10, 2009, there was a hearing before Circuit Judge John C. Yoder concerning M.H. (Am. Transcript [Docket 139-1] at 33-40). Assistant Prosecuting Attorney Kimberly Crockett presented an Amended Temporary Order of Custody ("custody order") that granted WVDHHR temporary custody of M.H. Because Prosecutor Crockett then moved to orally amended the proposed custody order to add C.H.1 and C.H.2. (*Id*. at 37). The court granted the motion to amend (*Id*. at 39) over the objections of Mr. Harrell's attorney Mr. Buck. (*Id*. at 38) ("In regard to other children, we have absolutely no notice, I'm just completely bushwhacked as to how to stand up

2

and proceed with this when the only petition before us is regarding [M.H.] . . . I certainly object to any kind of modification . . . At this time there's no notice to [Mr. Harrell], not [sic] opportunity to respond."). At this time, there was no petition filed that mentioned C.H.1, C.H.2, or Underwood. (*See* Am. Petition [Docket 139-1], at 1). At the end of the hearing, the court appointed Ms. Dalby, who was not present, as counsel for Underwood. (Am. Transcript [Docket 139-1] at 40). Later that day, Ms. Underwood's children were removed from her home by the WVDHHR. The written custody order, listing all three children and Underwood, was filed in the Circuit Court of Berkeley County, West Virginia on July 13, 2009. (Am. Order of Temporary Custody [Docket 139-1], at 41-44). The second amended petition added C.H.1 and C.H.2 and included allegations of unfitness against Underwood. The plaintiff alleges the petition was not filed until July 15, 2009, and the defendants allege that it was docketed on July 13, 2009 even though the petition is stamped July 15, 2009 and the notarized signature verifying the petition is dated July 15, 2009. (Second Am. Petition [Docket 141-4]; Docket Sheet [Docket 141-5]). The plaintiff argues the docket sheet entry of the petition on July 13, 2009 is an error.

On July 20, 2009, a preliminary hearing was held before the Circuit Court. At this hearing, the plaintiff contends WVDHHR and the children's guardian ad litem agreed that the children should be returned to Ms. Underwood's legal and physical custody. The defendants, however, dispute that Ms. Underwood was granted legal custody, alleging instead that she only received physical custody and that WVDHHR retained legal custody subject to Ms. Underwood completing a safety plan.

On July 27, 2009, one week after the children were returned to Underwood, Carper instructed Underwood to bring the children to the Berkeley County Office of the WVDHHR. The

plaintiff alleges Carper threatened to have her arrested for kidnapping if she did not bring in the children. (Pl.'s Supplemental Mem. Supp. Supplemental Mot. Summ. J. [Docket 140], at 6). Underwood complied, and Ms. Carper then removed the children from Underwood's custody. There was no preliminary hearing regarding the events on July 27, 2009.

A third amended petition was filed in August 2009, adding a new allegation that Underwood and Harrell failed to keep their children's immunizations current. (Third Am. Petition [Docket 139-2], at 9). On August 14, 2009 a hearing was held, and at this hearing, Underwood admitted to the new immunization allegation in the third amended petition. (Transcript of August 14, 2009 Hearing [Docket 149-2], at 79-81). Underwood specifically waived her right to a full evidentiary hearing. (*Id.* at 80-81). Based on this admission, the Court found that the children were neglected and then began an improvement period for Underwood. (*Id.* at 81).

Underwood attempted to comply with the improvement period requirements to regain full custody of her children. She was ultimately unsuccessful, and her parental rights were terminated in November 2010. Underwood filed a Motion to Reconsider the termination, which the court denied on May 3, 2011. In its order, the Circuit Court did acknowledge that WVDHHR had made several serious legal errors, including the fact that both legal and physical custody of the children were returned to Ms. Underwood on July 20, 2009, and therefore WVDHHR violated Ms. Underwood's rights by taking the children on July 27, 2009, without court ratification or setting a date for a preliminary hearing to determine if the children were in imminent danger. (Order [Docket 139-2], at 5). However, because Underwood had failed to find stable employment and housing, show up for her visitation times, and comply with other requirements of the improvement period, the court did not overturn the termination of her parental rights. (*Id.* at 7-8).

B. *Procedural History*

As described above, after the plaintiff's parental rights were terminated in November 2010, the plaintiff filed a motion to reconsider termination in Circuit Court on January 14, 2011, and it was denied in May 2011. On June 30, 2011, the plaintiff appealed to the Supreme Court of Appeals of West Virginia ("SCAWV"), alleging violations of the U.S. Constitution, the West Virginia Constitution, and West Virginia Code § 49-6-9(f). On the same day, the plaintiff also filed a Writ of Habeas Corpus. SCAWV denied the Writ of Habeas Corpus on September 8, 2011.

On September 26, 2011, SCAWV affirmed the Circuit Court's termination of Ms. Underwood's parental rights. In that memorandum opinion, SCAWV found that the plaintiff's due process rights were not violated by the July 27, 2009 taking of her children because she received only "physical custody on a probationary basis," at the July 20, 2009 hearing. (SCAWV Memorandum Decision [Docket 149-1], at 27). By entering into the safety plan, Underwood had also "waived her right to a preliminary hearing" and therefore "no particular findings of imminent danger were required as to her due to this arrangement." (*Id.*). When Underwood failed to follow the terms of the safety plan, WVDHHR was within its right to remove the children without having a new petition and preliminary hearing. SCAWV further held that the plaintiff had waived any alleged due process violations because she failed to raise the issue, despite being represented by counsel at the time. (*Id.*). It additionally affirmed the termination of Underwood's parental rights. (*Id.* at 28).

The plaintiff filed this action on July 25, 2011. The plaintiff's amended complaint names as defendants: WVDHHR; John J. Najmuski, in his official capacity as Commissioner of WVDHHR; Kathryn Bradley, Community Services Manager of the Berkeley/Jefferson/Morgan County

Offices of WVDHHR, in her individual capacity; Mary Carper, in her individual capacity; Justin

Castleman, in his individual capacity; Tzouri Oliver, in his individual capacity; Shelly

Nicewarner, in her individual capacity; Unknown Employees of WVDHHR and Supervisors of

Mary Carper, in their individual capacities; Mary Doe(s), in her individual capacity; and John

Doe(s), in his individual capacity.

The plaintiff's amended complaint contains seven counts, and the first two were dismissed

by my earlier order [Docket 20]. Count Three asserts a claim under 42 U.S.C. § 1983 for a

violation of the plaintiff's Fourteenth Amendment Due Process rights, and seeks compensatory

and punitive damages. The Complaint contains two counts labeled "Count Four." The first Count

Four (hereinafter "Count Four (A)") asserts a § 1983 claim for violation of the Fourth Amendment

protection against illegal search and seizure, and seeks compensatory and punitive damages. The

second Count Four (hereinafter "Count Four (B)") seeks an order finding that WVDHHR is in

contempt of court based on a Consent Decree in a 1984 case (*Gibson v. Ginsberg*). The complaint

also includes two counts labeled count five. The first Count Five (hereinafter, "Count Five (A)"),

asserts that the West Virginia Abuse and Neglect Statute is an unconstitutional violation of the

Fourteenth Amendment. The second Count Five (hereinafter, "Count Five (B)"), asserts a claim

for "Negligent, Wanton, Reckless and Malicious Infliction of Emotional Distress."

The defendants filed multiple motions for summary judgment in October 2012. The

defendants Kathryn A. Bradley, Justin Castleman, John Doe(s), Mary Doe(s), Shelly Nicewarner,

Tzouri Oliver, and Unknown Employees of the Department of Health and Human Resources filed

a combined motion for summary judgment [Docket 67]. The remaining defendants each filed

separate motions: Mary Carper [Docket 64], John Najmuski [Docket 69], and WVDHHR [Docket

71].[1] Pursuant to the issues discussed at the pre-trial conference on November 19, 2012, the court ordered the parties could file additional or supplemental dispositive motions and supporting memorandum [Docket 138]. All of the defendants collectively filed a supplemental memorandum [Docket 141]. The plaintiff also filed a supplemental motion for summary judgment [Docket 139] and memorandum [Docket 140].

## II.    Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere

---

[1]    The defendants initially filed these motions in redacted form, with the exhibits under seal. After I denied the motions to seal for several documents [Docket 136], the defendants re-filed their motions. The re-filed versions of the motions for summary judgment are: Carper [Docket 149], Najmuski [Docket 151], WVDHHR [Docket 153], Bradley et al. [Docket 155]. When citing to the record, I will refer to the re-filed versions because they have unsealed attachments.

"scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

## III.    Discussion

The defendants have filed multiple motions for summary judgment, and several of their arguments are similar or apply equally to multiple defendants. Therefore, I will first address arguments for summary judgment that apply to multiple claims and then proceed claim by claim, noting when the reasoning differs for different defendants. I will address relevant arguments in the plaintiff's motions for summary judgment within my discussion of each claim.

### A.  *Eleventh Amendment Immunity*

The defendants WVDHHR and John Najmuski, in his official capacity as Commissioner of WVDHHR, are entitled to Eleventh Amendment immunity from suit in federal court for damages. The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It therefore preserves sovereign immunity of the states of the Union in federal court. It is well settled that "this protection extends also to 'state agents and state instrumentalities' or stated otherwise, to 'arms of the State' and State officials." *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (citations omitted). An individual defendant employed thereby and sued in his official capacity is also immune from suit in federal court under the Eleventh

8

Amendment. *Id.* I have previously held that WVDHHR is an arm of the state and thus entitled to Eleventh Amendment immunity. *Workman v. Mingo Cnty. Sch.,* 667 F. Supp. 2d 679, 684 n.7 (S.D. W. Va. 2009).

Given no evidence of state consent in this case,[2] I **FIND** that the Eleventh Amendment bars all claims for damages against WVDHHR and Najumski, in his official capacity.

### B.   Count Three: 42 U.S.C. § 1983 Fourteenth Amendment Violation

As the first two claims in Underwood's amended complaint have already been dismissed, I will begin with Count Three, which alleges a violation of Underwood's Fourteenth Amendment due process rights under 42 U.S.C. § 1983. Specifically, the plaintiff alleges that defendants Bradley, Castleman, Oliver, Nicewarner, and Carper:

> acting under color of state law and while employees of the WVDHHR removed custody or caused the removal of custody of [C.H.1 and C.H.2] from Ms. Underwood on July 27, 2009 without prior notification to Ms. Underwood or her counsel, without prior judicial authorization, without a hearing, without subsequent judicial authorization or ratification, and without the consent of Ms. Underwood who was in legal and physical custody of the said children.

(Am. Compl. [Docket 18], at ¶ 66). The plaintiff alleges this violated her due process rights under the Fourteenth Amendment. The defendants argue this claim is collaterally estopped by SCAWV's September 26, 2011 opinion.

"Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir.

---

[2]     The United States Supreme Court has determined that 42 U.S.C. § 1983 was not a Congressional abrogation of Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). The Fourth Circuit has determined that the West Virginia statute concerning liability insurance (W. Va. Code § 29-12-5) only waives sovereign immunity from suit in state court. *Westinghouse Elec. Corp. v. W. Va. Dep't of Highways*, 845 F.2d 468, 470-71 (4th Cir. 1988).

2008). This principle applies equally to federal suits based on 42 U.S.C. § 1983. *Tincher v. Fink*, No. Civ.A. 2:03-0030, 2005 WL 1845319, at *7 (S.D. W. Va. Aug. 2, 2005) (noting that the Supreme Court decided in *Allen v. McCurry*, 449 U.S. 90 (1980) that "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered.") (*quoting Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83 (1984)).

> In West Virginia, collateral estoppel, also known as issue preclusion, requires that:

> > (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State ex rel. McGraw v. Johnson & Johnson*, 226 W. Va. 677, 688 (2010) (quoting *State v. Miller*, 194 W. Va. 3 (1995)).

The plaintiff argues preclusion is not appropriate in this instance. She argues that SCAWV decision was "expressly limited . . . to whether or not Ms. Underwood was provided the due process required by the state procedural rules and related statutes for child abuse and neglect. It made no analysis of constitutional law, the constitutional due process requirements in parental termination proceedings or reasonable search and seizure, or the constitutional sufficiency of the state statute or procedural rules." (Pl.'s Resp. Opp'n Def. Mary Carper's Mot. Summ. J. [Docket 123], at 9). She believes this argument is supported by the fact that SCAWV issued a Memorandum Decision instead of an Opinion, and no oral argument was held in this case. (*Id*. at 9-10). She further alleges that the lack of oral argument means she did not receive a full and fair opportunity to litigate the issue, and hence claim preclusion is not applicable. (*Id*. at 11). The

10

plaintiff also makes a smattering of additional arguments, none of which are well-developed or meritorious.

In her supplemental motion and memorandum for summary judgment, the plaintiff adds to her argument that the SCAWV decision should not preclude any of her claims. She notes first that issue preclusion applies "only if the factual issue in the original and succeeding proceeding are identical [Restatement (Second) of Judgments, §27 (1982)], and 'where the controlling facts and applicable legal rules remain unchanged.' *Internal Revenue v. Sunne*, 333 U.S. 591 (1948)." (Pl.'s Supplemental Mem. Supp. Supplemental Mot. Summ. J. [Docket 140], at 15). The plaintiff believes that the "newly produced transcript of July 10, 2009 contains facts relevant and material to Plaintiff's appeal in the WVSCA" because they support her argument "that her due process rights were violated and that she was subjected to fundamentally unfair procedures." (*Id.*).

Second, the plaintiff argues that the public interest exception to claim preclusion should apply in this instance. That exception applies when "[t]here is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action . . . ." (*Id.* at 16) (citing Restatement (Second) of Judgments § 28). The plaintiff argues that SCAWV's ruling "that the lower court does not have to comply with the requirements of WV child abuse statute and that waiver of constitutional due process rights can be implied in the absence of any affirmative action by the parent has a potential adverse impact on the public interest and the interest of other parents subject to abuse and neglect petitions." (*Id.*). For example, the plaintiff argues that the statute does not allow for physical and legal custody to be split, and even if it did, it was inappropriate for SCAWV to find Underwood waived her hearing right and agreed to receiving

only physical custody "even though Ms. Underwood did not speak at the hearing and no inquiry was made of her as to her intent to waive her right to a preliminary hearing and to consent to the Department retaining custody of her children . . . ." (*Id*. at 16-17).

Finally, in her response to the defendants' supplemental motion for summary judgment, the plaintiff adds to her argument that she did not have a full and fair opportunity to litigate her due process claim in her appeal. The plaintiff alleges that SCAWV lacked "material evidence," because it was not presented with the full transcript of the July 10, 2009 hearing. Underwood could not "have articulated the grounds for violation of her due process rights or asked for sanctions for the bad faith and deceit of the Department and its attorney, if the case had proceeded to termination of parental rights at all." (Pl.'s Resp. Defs.' Supplemental Mot. Summ. J. [Docket 146], at 10).

Despite the plaintiff's arguments to the contrary, all four elements of claim preclusion are present here. SCAWV decided that Underwood did not receive legal custody of her children on July 20, 2009, but instead received only physical custody that was conditioned on Underwood meeting the terms of the agreed safety plan. (SCAWV Memorandum Decision [Docket 149 Ex. E], at 2). Although there is no provision of the statute speaking to whether legal and physical custody can be split, clearly SCAWV has ruled that it can. When Underwood did not satisfy the terms of the safety plan, WVDHHR was within its rights to remove the children from Underwood's physical custody without an additional petition or hearing. (*Id*.). Therefore, there was "no violation of [Underwood's] due process rights in relation to the alleged illegal taking of the petitioner's children on July 27, 2009, and any related allegations concerning the lack of a new petition or an associated preliminary hearing as required by statute or the Rules of Procedure for Child Abuse and Neglect Proceedings." (*Id*. at 2-3).

This is precisely the same issue Underwood argues under Count Three, when she alleges the removal of her children on July 27, 2009 violated her due process rights because there was no consent, pre-taking judicial authorization, or post-taking judicial ratification. Despite the plaintiff's argument that the court did not reach any constitutional violations, the opinion clearly shows a ruling that the actions of the state actors violated neither the United States Constitution nor the West Virginia neglect and abuse statutes. SCAWV's decision was a final adjudication on the merits; they denied her appeal and specifically found her due process rights were not violated. Underwood herself brought the appeal, so she was clearly a party to the action being given preclusive effect. Underwood also had a full and fair opportunity to litigate this issue in her appeal to SCAWV. She herself brought up the issue of due process violations and she had the opportunity to argue it in her briefing.

I do not find that SCAWV's lack of the July 10, 2009 transcript hearing means Underwood did not receive a full and fair opportunity to litigate. The hearing does show there was no verified petition filed prior to the court awarding WVDHHR temporary custody of C.H.1 and C.H.2, and that the order of temporary custody on July 10, 2009 was orally amended to include C.H.1, C.H.2, and Underwood, but these are not "controlling facts" which compel a different outcome. The plaintiff argues this contributes to her earlier discussion of how the verified petition claiming abuse by Underwood to C.H.1 and C.H.2 may not have been filed until July 15, 2009, in apparent contravention of the West Virginia abuse and neglect statute.[3] The problem is that Underwood

---

[3]      A court order of temporary custody may be issued *before* a verified petition (describing the imminent danger) is filed, if the petition is filed within two judicial days after removing the children. At the expiration of those two days, the child must be returned unless the petition has been filed. West Virginia Code § 49-6-3(c) reads:

> If the emergency taking is ratified by the judge or referee, emergency custody of the child or children shall be vested in the department until the expiration of the next two judicial days, at which time any such child taken into emergency custody shall be returned to the

notified SCAWV of the timing of the petition in her briefs.[4]  The transcript does not add enough to overturn SCAWV's decision, because they could not have found WVDHHR had legal custody of the children on July 27, 2009 if WVDHHR lost statutory authority to hold them when the petition was filed late.[5]

I also decline to apply the public interest exception, as the plaintiff has not demonstrated that there is a "clear and convincing need" for the issue to be decided again. Admittedly, the facts as presented by Ms. Underwood are very concerning. She was not a party when the petition was orally amended at the July 10, 2009 hearing, originally regarding Underwood's boyfriend's child with another woman, to add C.H.1 and C.H.2. A lawyer representing Mr. Harrell (Underwood's boyfriend and M.H.'s father) was present at this hearing and had the opportunity to object to adding C.H.1 and C.H.2, but Underwood was not, as she was not even a party until part-way through the hearing. C.H.1 and C.H.2 were removed from Underwood's custody on July 10, 2009 pursuant to the orally amended custody order, which itself was not filed until July 13, 2009, and supported by a petition that was filed either July 13, 2009 or July 15, 2009. Though the date of the petition filing may not by itself violate the due process clause, as the defendants argue, it is *critical*

---

custody of his or her parent or guardian or custodian unless a petition has been filed and custody of the child has been transferred under the provisions of section three of this article.

Further, under West Virginia Code § 49-6-9(f), "[a]ny retention of a child or order for retention of a child not complying with the time limits and other requirements specified in this article shall be void by operation of law."

[4]    "The first petition in which Amanda Underwood, [C.H.1 and C.H.2] were named, however, was styled Second Amended Petition and was not filed or even notarized until July 15, 2009 and did not contain allegations consistent with imminent danger." (Pet. For Appeal by Amanda Underwood, Br. of Pet'r [Docket 149-1], at 75) (internal citations omitted); "Ms. Underwood's exercise of her fourth amendment rights . . . so angered the department workers, that they submitted an order of emergency custody of Ms. Underwood's children to the court without a supporting Petition on July 10, 2009. The subsequent petition, which was not filed or notarized until July 15, 2009 did not contain any facts or allegations supporting imminent danger as to Ms. Underwood . . . ." (*Id*. at 95-96).

[5]    This view of the SCAWV's decision is supported by the plaintiff's own supplemental memorandum supporting summary judgment: "The fact that the State Supreme Court failed to find that the order of July 10, 2009 issued against a non-party did not violate the statute or due process surely suggests that the statute is unconstitutional on its face." (Pl.'s Supplemental Mem. Supp. Supplemental Mot. Summ. J. [Docket 140], at 19).

14

to determining whether WVDHHR had valid legal custody of the children on July 20, 2009, such that they could legally retain legal custody as part of the safety plan. *See* W. Va. Code § 49-6-3(c). Adding to the confusion, there is no provision of the West Virginia abuse and neglect statute that speaks to granting WVDHHR emergency custody pursuant to a court order but without a filed petition.[6] At the initial hearing on July 20, 2009, no findings of imminent harm pursuant to West Virginia Code § 49-6-3(b) were made as to Underwood, no statement was made by her concerning her waiver of her right to a preliminary hearing, and no discussion was made of the implications of entering into a "safety plan." (*See* Transcript of July 20, 2009 Hearing [Docket 149-1], at 4-20). WVDHHR then retracted her physical custody on July 27, 2009, without any process.

These issues, though serious, are not enough for me to disturb the considered judgment of SCAWV.[7] Therefore, I **FIND** that Count Three is precluded by SCAWV's September 26, 2011 opinion.

C.  *Count Four (A): 42 U.S.C. § 1983 Fourth Amendment Violation*

---

[6]     West Virginia Code § 49-6-3(a) states that "[u]pon the filing of a petition, the court may order that a child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department . . . ." West Virginia Code § 49-6-3(b) speaks to the court's authority to extend WVDHHR's custody when there exists imminent danger to the child, if the court has a preliminary hearing and makes several enumerated findings. West Virginia Code § 49-6-3(c) allows a child protective service worker to take custody of a child without a court order if that child "in the presence of a child protective service worker, be in an emergency situation which constitutes an imminent danger to the physical well-being of the child or children [as defined in section 3, article 1]," provided the taking be ratified by judicial order after, and that such emergency custody shall last only two days unless a petition has been filed and custody transferred to WVDHHR under West Virginia Code § 49-6-3. West Virginia West Virginia Code § 49-6-9(a) allows for a law-enforcement officer to take custody of a neglected or abused child without a court order if the child is abandoned or emergency medical treatment is necessary, pursuant to restrictions contained in the other sections of § 49-6-9. These appear to be the only custody options, as West Virginia Code § 49-6-9(f) states: "No child shall be taken into custody under circumstances not justified by this section or pursuant to section three of this article without appropriate process. Any retention of a child or order for retention of a child not complying with the time limits and other requirements specified in this article shall be void by operation of law."

[7]     The use of the public interest exception "must be the rare exception . . . Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one." Restatement (Second) of Judgments § 28, Comment g.

Count Four (A) alleges a violation of Underwood's Fourth Amendment right under 42 U.S.C. § 1983 from Mary Carper's actions on July 27, 2009. Specifically, the plaintiff alleges Carper, "while knowing that the WVDHHR did not have judicial or statutory authority to remove the custody of [C.H.1 and C.H.2] from Ms. Underwood, required Ms. Underwood to bring the children to the WVDHHR building in Berkeley County, WV under threat of arrest for kidnapping, where Ms. Carper took illegal custody of said children." (Am. Compl. [Docket 18], at ¶ 77). The plaintiff alleges defendant Carper "acted with malicious intent, reckless indifference and callous disregard for the rights of Ms. Underwood," which caused Underwood harm. (*Id*. at ¶ 78).

It is unclear from the wording of the complaint whether Underwood is alleging her Fourth Amendment rights were violated or her children's Fourth Amendments rights were violated. The Fourth Amendment protects individuals from "unreasonable searches and seizures by government officials and those private individuals acting as 'instrument[s] or agent[s]' of the Government." *United States v. Jarrett,* 338 F.3d 339, 344 (4th Cir. 2003). A Fourth Amendment seizure of a person occurs when a reasonable person would believe he/she was not free to leave, "in view of all the circumstances surrounding the incident." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

To the extent Underwood claims harm from her children being taken into allegedly illegal custody and unable to leave WVDHHR custody, this claim fails as a matter of law. The Fourth Amendment right to be free from unreasonable government seizures is a personal one. *See Alderman v. United States,* 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."); *see also Gedrich v. Fairfax Cnty. Dep't of Family Servs.,* 282 F.Supp.2d 439, 468 (E.D.Va. 2003) (finding

16

that only the child could raise a Fourth Amendment violation claim relating to her custody).

Further, even if this claim had been properly brought, Carper would be entitled to qualified

immunity.[8] If Underwood intended to state a claim that her Fourth Amendment rights were

violated by Carper's threat of arrest, this claim fails because Underwood was not seized.

Therefore, I **FIND** that there is no genuine issue of material fact as to this claim and award

judgment in favor of the defendant Mary Carper on this count.

### D. Count Four (B): Enforcement of Consent Decree in Gibson v. Ginsberg

Count Four (B) seeks a finding that WVDHHR is in contempt of the Amended Consent

Decree of June 8, 1984 in *Gibson v. Ginsberg*, Case No. 78-2375 as well as enforcement of the

Consent Decree. The plaintiff earlier filed a motion in the case, now called *Gibson v. Allen*, which

Judge Copenhaver ruled on. No. 2:78-2375, 2011 WL 2214919 (S.D. W. Va. June 3, 2011). Judge

---

[8]     "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Price v. Sasser*, 65 F.3d 342, 345 (4th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether qualified immunity applies depends on "whether a constitutional violation occurred and . . . whether the right violated was clearly established." *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012). The court may address these two elements in any order. *Id*. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). Although a case exactly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

        The SCAWV determined that Underwood did not have legal custody of her children on July 27, 2009. A reasonable official could therefore believe that when the state retains legal custody, it can rescind physical custody without violating the Fourth Amendment. *Rivera v. Mattingly*, No. 06 Civ. 7077(TPG), 2011 WL 4344422, at *11 (S.D.N.Y. Sept. 12, 2011) (finding the plaintiffs' Fourth Amendment claim failed as a matter of law because they could provide no Second Circuit cases "holding that Fourth Amendment seizures occur when foster children in the state's legal custody are moved from one foster home to another."); *A.C. v. Mattingly*, No. 05 CV 2986(TPG), 2007 WL 894268, at *5-6 (S.D.N.Y. Mar. 20, 2007) (finding no Fourth Amendment violation because the state retained legal custody of the infant plaintiffs); *Hunt v. Green*, 376 F. Supp. 2d 1043, 1057-58 (D.N.M. 2005) (noting that "[t]here are good reasons to require a warrant or court order when . . . the state is removing children from parents or others who have legal custody," but that "[t]here is no such compelling reason for judicial action where the state is changing foster parents or physical guardians," because this would "largely erase the distinction between legal and physical custody"); *id*. at 1058 n.5 (recognizing "the lack of case law discussing the constitutional implications of a state changing the placement of children in the state's legal custody," and analogizing to cases regarding the rights of prisoners); *Gedrich v. Fairfax Cnty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 469-70 (E.D. Va. 2003) (finding no Fourth Amendment violation for confining plaintiff minor child when the state had legal custody).

Copenhaver ruled Underwood could not recover under the Consent Decree because she is not part

of the class the Consent Decree covers. *Id*. at *6-7. Specifically, Judge Copenhaver found that:

> [c]overage is thus confined, *inter alia*, to all parents and their children 'who
> are residents' in 1979. . . . Both children are under five years of age.
> [Underwood] was not their parent, and neither she nor the children were
> apparently residents of the state, on either January 8, 1979, class
> certification date or the June 8, 1984 Amended Consent Decree date.
> Neither the movant nor her children are thus included within the class
> definition found in the Amended Consent Decree. They are hence
> prohibited from seeking relief for any contumacious conduct committed by
> those falling subject to its terms.

*Id*. at *7.

The defendant WVDHHR argues that this count is barred by claim preclusion. Federal law

determines the preclusive effect of a prior federal judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891

(2008) ("The preclusive effect of a federal-court judgment is determined by federal common

law."); *see also Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989). Federal claim

preclusion has three requirements:

> 1) the parties must be the same or in privity with the original parties;
> 2) the claims in the subsequent litigation must be substantially the
> same as those in the prior litigation; and 3) the earlier litigation must
> have resulted in a final judgment on the merits.

*Shoup*, 872 F.2d at 1179 (citing Restatement (Second) of Judgments § 19 (1982)). The first two

elements are clearly present here. Because the original *Gibson v. Ginsberg* case was brought

against several officials in the West Virginia Department of Welfare, precursor to WVDHHR,

back in 1978, when Underwood filed her petition, she named as successors to those positions: John

J. Najmuski, Kathryn A. Bradley, Mary Carper, and unknown supervisors of Mary Carper. The

defendants in this case are: WVDHHR; John J. Najmuski, Commissioner of WVDHHR; Kathryn

Bradley, Community Services Manager of the Berkeley/Jefferson/Morgan County Offices of

18

WVDHHR; Mary Carper; Justin Castleman, supervisor to Carper; Tzouri Oliver, employee of WVDHHR; Shelly Nicewarner, employee of WVDHHR; and Unknown Employees of WVDHHR and Supervisors of Mary Carper; Mary Doe(s); and John Doe(s). Underwood's petition had several counts, the first of which sought a finding that the defendants were in contempt of the Amended Consent Decree and an injunction prohibiting WVDHHR from retaining custody of C.H.1 and C.H.2, which are identical to Underwood's request in Count Four (B).

The third element is that the judgment be on the merits. Federal Rule of Civil Procedure 41(b) grants district courts "discretion to 'otherwise specif[y] that a dismissal is not 'an adjudication upon the merits,' i.e., that it is a dismissal without prejudice." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006). "A dismissal with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. Conversely, a dismissal without prejudice operates to leave the parties as if no action had been brought at all." *McLean v. United States*, 566 F.3d 391, 407 (4th Cir. 2009) (internal quotations and citations omitted). Accordingly, the distinction between the two forms of dismissal "really pertains only to claim preclusion and issue preclusion . . . ." *Id.*

Judge Copenhaver declined to reopen the case and therefore denied the motion for an order to show cause. He also ruled that "[t]he denial is without prejudice to movant's pursuit of any other available remedies." *Gibson*, 2011 WL 2214919 at *7. A plain reading of Judge Copenhaver's opinion indicates that his denial of the motion was on the merits as to the *Gibson* claim (Count One of her petition),[9] but without prejudice as to Underwood's other claims. Judge Copenhaver found specifically that Underwood was not in the class definition in the Amended Consent Decree based on the age of her children, an immutable characteristic. He accordingly did not reopen the case

---

[9]     Judge Copenhaver found Count Four to be "duplicative in all respects of Count One." *Gibson*, at *5.

19

*Gibson v. Allen* to allow Underwood to proceed enforcing the Amended Consent Decree. The *Gibson* claim was not the only remedy Underwood sought, however. Count Two of Underwood's petition sought a declaratory judgment that WVDHHR's removal of the children violated her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Count Three sought an injunction prohibiting WVDHHR from retaining custody of the children. Count Five alleged negligent and intentional infliction of emotional distress. It is clear that Judge Copenhaver intended the denial to be without prejudice as to these other claims because he did not reach their merits.

Therefore, I **FIND** that the plaintiff's Count Four (B) is precluded by Judge Copenhaver's earlier ruling that she is not a part of the *Gibson* class.

### E.  Count Five (A): The West Virginia Abuse and Neglect Statute is Unconstitutional and/or Unconstitutional as Applied

The plaintiff alleges that West Virginia's procedure for abuse and neglect in Chapter 49 of the West Virginia Code and Rules of Appellate Procedure is unconstitutional and/or unconstitutional as applied to her because it creates a substantial risk of error and no meaningful review. (Am. Compl. [Docket 18], at ¶ 86). The plaintiff notes that parents have a liberty interest in raising their children and therefore must receive due process when their parental rights are terminated. The test for determining what process is due balances: "the private interests affected by the proceeding, the risk of error created by the state's chosen procedure, and the countervailing government interest supporting use of the challenged procedure." (*Id.* at ¶¶ 83-85). The plaintiff alleges that "West Virginia Code § 49-6-1 et seq. fails to require clear and convincing evidence of unfitness at the time of termination of parental rights as required by *Santosky v. Kramer, Commissioner, Ulster County Department of Social Services*, 455 U.S. 745 (1982)." (*Id.* at ¶ 87).

The plaintiff argues that the only basis for the state court finding her children were neglected was her admission in court that she had missed a vaccination due to her inability to pay for a missed appointment. (*Id.* at ¶ 89). The plaintiff contends that the court failed to find that a missed vaccination "constituted abuse and neglect by clear and convincing evidence or any other standard," and that "[w]hether or not any particular act of a parent meets the requirements of abuse and neglect is a legal determination to be made by the court not the parent particularly a parent who is under duress due to the removal of her children by the state." (*Id.* at ¶¶ 90, 94). The plaintiff objects to the fact that "no evidence was presented that the child suffered any harm or was likely to suffer from the missed vaccination." (*Id.* at ¶ 93). Finally, the termination of her parental rights in November 2010 was made without any finding of unfitness, or if a finding of unfitness was made, it was based solely on Underwood's admission instead of a judicial determination that the missed vaccination constituted abuse and neglect. (*Id.* at ¶¶ 95-96).

The plaintiff has alleged several other defects with the West Virginia abuse and neglect procedures, yet none of those were mentioned in her amended complaint in Count Five (A) [Docket 18]. For example, in her memorandum supporting her motion for summary judgment, the plaintiff complains of the lack of a pre-removal notification and/or hearing and cites extensively from *Gibson*. ([Docket 93], at 13-19). Further, in her supplemental memorandum for summary judgment, the plaintiff argues that "[w]here the WVSCA has found that the court or the Department can differentiate between legal and physical custody and uses this to justify lack of due process, the statute is constitutionally insufficient in that it fails to put parents on notice of this distinction and the consequences of such distinction such as the finding by the WVSCA in this case." ([Docket 140], at 19). Not only does this not appear to allege a violation of a specific part of

21

the Constitution, but also it is not mentioned in the plaintiff's amended complaint, nor has the plaintiff attempted to amend her complaint after SCAWV issued its decision. Because these issues were not discussed in the amended complaint as part of a facial or as-applied challenge to the statute, I will not consider them on summary judgment. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *see also Anderson v. Donahoe*, 699 F.3d 989, 997-98 (7th Cir. 2012) (noting that briefs for summary judgment cannot amend the complaint, even if those facts are technically in the complaint, because they were contained in another count and did not give the defendant fair notice of the claims alleged they are not asserted).

"An as-applied challenge attacks the constitutionality of a statute 'based on a developed factual record and the application of a statute to a specific person.'" *Doe v. Va. Dep't of State Police*, No. 11-1841, 2013 WL 1496937, at *10 (4th Cir. April 12, 2013) (quoting *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009)). "By contrast, a litigant asserting a facial challenge contends that a statue always operates in an unconstitutional manner." *Id.* (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). To succeed on a facial challenge, the litigant must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The defendants first argue that the court should abstain from ruling on the merits of this claim because "[i]ssues of comity and federalism demand that where a Plaintiff has an adequate remedy at law to raise constitutional challenges during a state action, federal courts should abstain from deciding those issues." (Def. WVDHHR's Mem. Supp. Mot. Summ. J. [Docket 72], at 13).

The defendants argue that because the plaintiff could have raised their federal claims in the state proceeding, "abstention and dismissal of the federal claims in this lawsuit are appropriate." (*Id.* at 14). The defendants rely chiefly on *Moore v. Sims*, 442 U.S. 415 (1979) for their abstention argument.

*Moore* was an application of *Younger* abstention, which has a three-part test in the Fourth Circuit: "(1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." *Emp'rs Res. Mgmt. Co., Inc. v. Shannon,* 65 F.3d 1126, 1134 (4th Cir. 1995). Additionally, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

Here, the state court proceeding is no longer pending. The West Virginia Supreme Court of Appeals has rendered their decision, and the defendants assert the plaintiff did not appeal that decision. *See Dostert v. Neely*, 498 F. Supp. 1144, 1151-52 (S.D. W. Va. 1980) (finding that Younger abstention is applicable until the state proceedings are final, and that "such finality will not be achieved until review in the United States Supreme Court either has been concluded or is no longer possible."). The extent to which abstention might have been warranted prior to the expiration of the plaintiff's time to appeal the SCAWV's September 2011 decision to the United States Supreme Court is a moot question. Comity and federalism can be served by giving the state court's decision proper preclusive effect under West Virginia law.

The defendants have also argued that the plaintiff's claim fails on its merits. They point out that although the plaintiff's complaint mentions the entire procedures in Chapter 49 of the West Virginia Code and Rules of Appellate Procedure, the only specific problem argued is that it does not require clear and convincing evidence of unfitness at the time of termination, in violation of *Santosky v. Kramer*, 455 U.S. 745 (1982). The defendants argue that by its very text, West Virginia Code 49-6-2(c) does, however, require clear and convincing evidence:

> (c) In any proceeding pursuant to the provisions of this article, the party or parties having . . . parental rights . . . shall be afforded a meaningful opportunity to be heard . . . . The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department to remedy the alleged circumstances. *At the conclusion of the hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected* and, if applicable, whether the parent, guardian, or custodian is a battered parent, all of which shall be incorporated into the order of the court. *The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.*

(emphasis added). Therefore, the defendants argue the statute is constitutional on its face.

The plaintiff makes only one argument relating to the facial constitutionality of the "clear and convincing" evidence provision. She alleges that although the statute does say it requires clear and convincing evidence, this provision can be waived. She bases this on the face that SCAWV "refused to even address the failure of the circuit court to make the findings required in W.Va. Code § 49-6-2(c) and that the missed vaccination constituted neglect by clear and convincing evidence." (Pl.'s Resp. Opp. Defs.' Supplemental Mot. Summ. J. [Docket 146], at 11). This argument, however, goes to whether the statute is constitutional as applied, as the statute itself does not make the clear and convincing evidence standard waivable.

24

I **FIND** that the statute is constitutional on its face, as it requires clear and convincing evidence to support a finding that a child is abused or neglected, in accordance with *Santosky v. Kramer*, 455 U.S. 745 (1982).

The defendants then argue the statute is constitutional as applied to Underwood. At the August 14, 2009 hearing concerning the third amended petition, the plaintiff waived her right to a contested adjudication hearing and admitted to the medical neglect allegation in the third amended petition. The court noted Underwood's waiver of her right to a contested adjudication, and then found based on her admission that the children were neglected. The defendants allege that the statute requires clear and convincing evidence but "does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syl. pt. 1, *In the Interest of S.C.*, 168 W. Va. 366 (1981). A judicial admission meets the burden of proof, and therefore the process as applied to Underwood did violate her due process rights.

Here, the plaintiff's earlier argument about the lack of clear and convincing evidence is relevant. The plaintiff argues:

> WVDHHR misapprehends the issue. It is not whether or not Ms. Underwood honestly answered that she missed a vaccination as the petition alleged but whether or not the court found, by clear and convincing evidence that this made Ms. Underwood an unfit parent. The burden of that finding is on the court not on Ms. Underwood. Even if Ms. Underwood had required the Department to prove that she missed the vaccination the court would still have been required to make a finding that this constituted clear and convincing evidence that she was an unfit parent. The court at no time made that finding.

([Docket 124], at 16). The plaintiff notes that the statute defines a "neglected child" to be a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary . . . medical care . . . when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent . . . ."

25

W. Va. Code § 49-1-3(11)(A)(i). The plaintiff contends that WVDHHR "did not introduce any evidence that Ms. Underwood intentionally missed the vaccinations or that the missed vaccination was not due to her inability to pay the doctor." (Pl.'s Resp. Opp. Defs.' Supplemental Mot. Summ. J. [Docket 146], at 9). The plaintiff believes the court could not find the children to be neglected based on clear and convincing evidence because no evidence was provided on all elements of medical neglect.

The fatal defect with this argument is that it ignores what was actually said during the August 14, 2009 hearing. To understand how the plaintiff's argument fails, I will first review the relevant portion of the transcript:

> THE COURT: Ms. Dalby, are you ready to proceed?
> MS. DALBY: Your Honor, my client's willing to admit to the medical neglect, the new allegation that's in here and ask for an improvement period . . .
> . . .
> THE COURT: [To Ms. Dalby] [Y]our client's prepared to admit essentially medical neglect with respect to the third amended petition or not?
> MS. DALBY: Yes, Your Honor.
> THE COURT: Okay. Why don't you go ahead with that?
> . . .
> MS. DALBY: And you've now had an opportunity today, in the last few minutes, to look at the new amended allegation number 20, is that correct?
> MS. UNDERWOOD: Yes.
> MS. DALBY: And that says that the respondent parents jointly and severally failed to keep the children's immunizations current; and that failure constitutes medical neglect. Do you understand that?
> MS. UNDERWOOD: Yes.
> MS. DALBY: Okay. And you're ready today to admit that you did fail to keep all the immunizations current, is that correct?
> MS. UNDERWOOD: Yes.
> MS. DALBY: And would you want to tell the Court why you didn't keep the immunizations current as charged in the petition?
> MS. UNDERWOOD: Because we actually lost our home, our car, pretty much everything we had. We were living in a hotel room; and

> they tried to charge me for a missed appointment; so I couldn't bring my kids back until I paid at least half that off; and I still can't.
> . . .
> MS. DALBY: And you understand that you have the right to make the Department put on evidence here, and have a full evidentiary hearing at which you could cross-examine their witnesses; and bring your own witnesses and be represented by counsel, is that correct?
> MS. UNDERWOOD: Yes.
> MS. DALBY: You want to waive that?
> MS. UNDERWOOD: Yes.
> . . .
> MS. DALBY: You want . . . you will be making a written admission. . . or a motion for an improvement period, is that correct?
> MS. UNDERWOOD: Yes.

([Docket 149-2], at 74, 78, 79-81). The court's finding that the children were neglected was based on the combination of Underwood's waiver of a hearing and her admission. Underwood specifically *waived* her due process right to make WVDHHR prove medical neglect by clear and convincing evidence, and then she admitted to paragraph 20 of the third amended petition, which alleged medical neglect. A judicial admission clearly meets the clear and convincing evidentiary standard. WVDHHR did not introduce evidence that Underwood failed to vaccinate her children for some reason other than a lack of financial means because Underwood did not assert her due process rights in this hearing, and then herself provided the necessary admission.

Therefore, I **FIND** that there is no genuine issue of material fact that the West Virginia abuse and neglect statute was constitutional as applied to Underwood.

### F. Count Five (B): Negligent, malicious infliction of emotional distress

The plaintiff's final count is for the negligent, malicious infliction of emotional distress. The plaintiff alleges the defendants were negligent, wanton, and reckless in taking and retaining custody of the children without consent, prior judicial authorization, or imminent danger. The plaintiff further alleges the defendants were negligent, wanton, and reckless by taking and

retaining custody of C.H.1 and C.H.2 after the July 20, 2009 hearing, where Underwood alleges "the court had determined there was no imminent danger and had returned the children" to the plaintiff. (Am. Compl. [Docket 18], at ¶ 99). The plaintiff alleges the defendants were further negligent, wanton, and reckless by retaining custody of the children and consenting to the adoption of the children, in light of the circuit court's May 3, 2011 order that found Underwood received both legal and physical custody on July 27, 2009. (*Id*. at ¶¶ 100-101). Against defendants Bradley, Castleman, Oliver, and Nicewarner, the plaintiff alleges they were negligent, wanton and reckless in failing to supervise Carper in her actions on July 27, 2009. The plaintiff alleges that as a result of this negligence, she has suffered "loss of enjoyment of life, loss of care custody and companionship of her children, emotional distress, depression, anxiety, embarrassment, humiliation, and pain and suffering, stigma to her reputation, and physical injury all resulting in conscious pain and suffering." (*Id*. at 104). The plaintiff seeks damages not to exceed one million dollars. (*Id*. at 105).

The facts necessary to this claim are clearly barred by SCAWV's decision that WVDHHR followed the West Virginia abuse and neglect statute and retained legal custody from July 20, 2009 on. Based on West Virginia's four factor test for issue preclusion, I **FIND** that the defendants had legal custody on July 27, 2009 and continued to have legal custody from then on. Therefore, without some other source of improper behavior, the defendants cannot be held liable under tort for legally removing the children from Underwood's physical custody on July 27, 2009 and for retaining custody of them after May 3, 2011. There have been no negligent acts by the defendants, according to the preclusive facts established by SCAWV's decision.

Therefore, I **FIND** that there is no genuine issue of material fact relating to this claim, and award judgment to the defendants.

## IV.     Conclusion

The defendants motions [Dockets 64, 67, 69, 71] are **GRANTED**, and the plaintiff's motions [Dockets 92, 139] are **DENIED**.

ENTER:          May 28, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE